# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CHAMBERS MEDICAL FOUNDATION** | : | **DOCKET NO. 05-0786** |
| **VS.** | : | **JUDGE MINALDI** |
| **CAROL PETRIE CHAMBERS, ET AL.** | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Before the court are the following motions: Motion to Intervene by the Estate of Russell C. Chambers, M.D., [doc. # 42]; and a Motion to Intervene by Jason R. Chambers [doc. # 49].[1]

## Law

Federal Rule of Civil Procedure 24 contemplates two types of intervention: intervention of right and permissive intervention. To intervene as of right each of the following four requirements must be met: "(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit." *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 61 (5th Cir. 1987)(citations omitted); *see also, Hopwood*

---

[1] The motions have been referred to the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(A).

*v. State of Tex.*, 21 F.3d 603, 605 (5th Cir. 1994).[2]

Permissive intervention is appropriate where "an applicant's claim or defense and the main action have a question of law or fact in common." *Trans Chemical Ltd. v. China Nat. Machinery Import and Export Corp.*, 332 F.3d 815, 824 (5th Cir. 2003)(quoting, Fed.R.Civ.P. 24(b)(2)). Yet, even if a party meets the requirements of Rule 24(b), permissive intervention remains "wholly discretionary" with the court. *S.E.C. v. Funding Resource Group* 2000 WL 1468823 (5th Cir. 2000)(unpubl.)(*citing*, *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984).

In addition to satisfying the criteria for intervention pursuant to Rule 24, the proposed intervenor must also establish that we have subject matter jurisdiction to decide the new claim. *See*, 7A C. Wright & A. Miller, Federal Practice and Procedure § 1917 (citing, Fed.R.Civ.P. 82's recognition that the rules of civil procedure cannot extend or limit federal court jurisdiction); *Dev. Finance v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156 (3rd Cir. 1995)(proposed intervenor enjoys burden of showing that claims are properly before the court).

Since its enactment in 1990, the supplemental jurisdiction statute has been the customary vehicle to facilitate jurisdiction of an intervention. 28 U.S.C. § 1367(a)("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."). In cases where original jurisdiction is grounded upon a federal question, 28 U.S.C. § 1331, supplemental jurisdiction ordinarily attaches to the intervention without further ado. 28 U.S.C. § 1367(b). However, in cases where original jurisdiction is conferred by diversity, 28 U.S.C. §

---

[2] Intervention is also allowed when a statute of the United States confers a right to intervene. Fed.R.Civ.P. 24. Here, however, movants do not seek intervention on that basis.

1332, the courts shall not have supplemental jurisdiction over claims by persons seeking to intervene as plaintiffs under Rule 24 when exercising supplemental jurisdiction over the claims would be "inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b). In other words, a would-be intervenor-plaintiff in a diversity case must demonstrate an independent jurisdictional ground to support the claim, *e.g.*, federal question or diversity. *See*, *Hunt Tool Co. v. Moore, Inc.* 212 F.2d 685, 688 (5th Cir. 1954)(addressing pre-§ 1367, ancillary jurisdiction).[3]

However, § 1367(b) is silent as to would-be intervenor-defendants in a diversity case. This silence has led courts to conclude that we may exercise supplemental jurisdiction over intervenor-defendants. *See*, *State National Insurance Co., Inc. v. Yates*, 391 F.3d 577, fn. 16 (5th Cir. 2004)(citing, *Development Finance Corp. v. Alpha Housing & Health Care, Inc.*, *supra*); *Dushane v. Gallagher Kaiser Corp.*, 2005 WL 1959151, Civil Action Number 05-0171 (W.D. La. 8/10/05); *MCI Telecommunications Corp. v. Logan Group, Inc.*, 848 F.Supp. 86 (N.D. Tex. 1994).

Thus, in a diversity case, whether a proposed intervenor is classified as a plaintiff or as a defendant can be of critical significance. However, a party's self-denomination is not determinative. Rather, the courts must classify the intervenor in accordance with the intervenor's

---

[3] If the plaintiff-intervenor relies on diversity, then arguably, the amount in controversy must exceed the requisite minimum set forth in § 1332. In *Exxon Mobil Corp. v. Allapattah Services, Inc.*, the Supreme Court recognized that as long as at least one plaintiff's claim exceeded § 1332's threshold, then § 1367 conferred supplemental jurisdiction over the otherwise insufficient claims of the remaining plaintiffs. *See*, *Exxon Mobil Corp. v. Allapattah Services, Inc.* ___ U.S. ___, 125 S.Ct. 2611 (2005). However, the Court noted that § 1367(b) contained enumerated exceptions that were not applicable in that case. *Id.* One of those exceptions is a party who seeks to intervene as a plaintiff pursuant to Rule 24. *Id.* at 2621.

3

true interest. One such test is to ensure that all the parties with the same 'ultimate interests' in the outcome of the action are on the same side. *Lowe v. Ingalls Shipbuilding, A Div. of Litton Systems, Inc.*, 723 F.2d 1173 1177-1178 (5th Cir. 1984)(citing, Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3607). A second test used by the courts of late defines "an intervening 'plaintiff' [as] one who voluntarily chooses to intervene in an ongoing federal action to assert its own affirmative claims." *MCI Telecommunications Corp., supra*; *Dushane, supra*; *Evert v. Finn,* 1999 WL 246711 (E.D. La. 1999).[4] By contrast, "non-plaintiff intervenors entitled to supplemental jurisdiction for their claims are those who must intervene to defend or protect interests put in issue by the federal action and likely to be lost without the party's intervention." *Id.*

With these preliminary guideposts in place, we turn to the proposed interventions.

I. The Estate of Russell C. Chambers, M.D.

The first consideration is timeliness.

> Timeliness of intervention depends on a review of all the circumstances, and the Fifth Circuit has identified four factors to consider: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) prejudice to the existing parties resulting from the intervenor's failure to apply for intervention sooner; (3) prejudice to the intervenor if his application for intervention is denied; and (4) the existence of unusual circumstances.

*Trans Chemical Ltd. v. China Nat. Machinery Import and Export Corp.*, 332 F.3d 815, 822 (5th

---

[4] The *MCI* court was reluctant to formally "re-align" the intervenor according to its interest because of language in *Zurn Industries, Inc. v. Acton Const. Co.*, 847 F.2d 234 (5th Cir. 1988), suggesting that re-alignment is only proper for the original parties to the suit. *MCI Telecommunications Corp.*, *supra*. However, intervention was not at issue in *Zurn*. Moreover, an earlier panel of the Fifth Circuit expressed no hesitation about realigning a proposed defendant under Rule 19, as a plaintiff for purposes of diversity. *Eikel v. States Marine Lines, Inc.*, 473 F.2d 959, 964 (5th Cir. 1973).

4

Cir. 2003)(citation omitted).

The instant suit was filed by the Chambers Medical Foundation ("the Foundation") on April 1, 2005, in the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana. On May 6, 2005, defendant, Carol Petrie Chambers ("Petrie"), removed the case to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1332. On May 25, 2005, the Foundation, whose co-trustees were Russell C. Chambers, M.D. and Edwin K. Hunter,[5] filed a motion to remand the case to state court. The motion to remand was denied by judgment dated January 23, 2006.

On May 30, 2005, Russell Chambers passed away. (Intervention, Exh. C). His Last Will and Testament was filed less than two months later on July 7, 2005, in Eagle County, Colorado. (*See*, Estate Memo., Exh. A). Edwin K. Hunter was named Independent Executor of the Russell C. Chambers Estate. *Id*. An order establishing the ancillary probate of Chambers' estate in Louisiana was signed on January 20, 2006. (Intervention, Exh. E). The instant motion to intervene was filed on February 1, 2006.

We are not convinced that the Estate's proposed intervention is prejudicially late. The instant suit remains in its infancy. Indeed, the sole remaining defendant has not yet filed an answer. Moreover, the primary concern of the removing defendant appears to be that if the Estate were permitted to intervene, then it would destroy federal subject matter jurisdiction.[6]

---

[5] *See*, Petition, ¶ 3.

[6] During a February 7, 2006, telephone conference, the parties agreed that if the intervention were permitted, then diversity would be destroyed. (*See*, Minutes for February 7, 2006, Motion Hearing). This is technically correct, for if the Estate were joined as a defendant then the parties would no longer be diverse due to Edwin K. Hunter's status both as trustee for

However, as set forth above, if the Estate is permitted to join as a defendant, then we can exercise supplemental jurisdiction. 28 U.S.C. § 1367.

If, instead, the Estate were joined as a plaintiff, then we would retain complete diversity because Edwin K. Hunter in his various capacities, would be on the same side of the suit.[7] Yet, the Estate has made no effort to establish federal subject matter jurisdiction over its proposed intervention.[8] Rather, the barely disguised object of the intervention is to secure remand. For instance, the intervention states that a motion to remand would be filed contemporaneously. (Intervention, ¶¶ X, XIII).[9] Moreover, in its prayer, the Estate's first request is that the matter be remanded to the 14th Judicial District Court and then that the state court decide the issues raised by the intervention. (Intervention, Prayer). Obviously, the Estate has little interest in having its intervention heard in this forum.

In sum, it is not so much the timeliness of the motion to intervene that is objectionable, it is the *timing* of the motion to intervene – less than two weeks after the judgment was signed denying the Foundation's motion to remand.

The second consideration for intervention as of right is the proposed intervenor's interest

---

the plaintiff and as executor of the Estate.

[7] The Estate could also argue that its claim involves a substantial federal issue sufficient to confer federal question jurisdiction. *See, Klosterman v. Christus Health, et al.*, Civil Action Number 05-0408 (W.D. La. 8/18/05)(impliedly recognizing that a federal tax issue embedded in a claim raises federal question jurisdiction).

[8] In its proposed pleading, the Estate states that Rule 24 confers jurisdiction. (Intervention, ¶ XII). However, the rules of civil procedure cannot confer jurisdiction. Fed.R.Civ.P. 82.

[9] The motion to remand has yet to be filed.

in the property or transaction in dispute. This interest must be "significantly protectable." *Diamond v. Charles*, 476 U.S. 54, 68, 106 S.Ct. 1697,1707 (1986)(citation omitted). The initial complaint in this matter focuses upon the enforceability of an April 2, 2004, Agreement ("the Agreement") between Carol Petrie Chambers; Jason R. Chambers; Elaine B. Chambers, as trustee of the Marshalled Cherubs Trust; Dr. Rose Briglevich, as trustee of the R. C. Chambers Irrevocable Trust; Edwin K. Hunter, as co-trustee of the Chambers Medical Foundation; and Russell C. Chambers, M.D., individually, and as co-trustee of the Chambers Medical Foundation. (Complaint, Exh. A). The Foundation contends that pursuant to the Agreement, Petrie has lost all rights to the gifts and benefits otherwise assigned to her, and that they instead pass to the Foundation. (Petition, ¶¶ 18-19). The suit also seeks a declaration compelling Petrie to submit to mediation in Lake Charles, in accordance with the Agreement. (Petition, ¶ 26). Finally, the Foundation seeks a money judgment against Petrie to the extent that she is unable to forward the gifts and benefits to the Foundation which she has already received under the Agreement. (Petition, ¶ 24).

The Estate's proposed intervention seeks to protect the rights of the Estate to contribution for federal and state estate tax purposes from the gifts and/or benefits previously received by Petrie under the Agreement and/or transferred to the Foundation due to Petrie's alleged breach of the Agreement. (Intervention, ¶ IX). The Estate further alleges that there are potentially substantial differences in the tax treatment of marital and charitable deductions. *Id*. at ¶ X. Nevertheless, the Estate in "no way" contests the validity of the Agreement. *Id*. at ¶ XI. Moreover, the Estate admits virtually all of the allegations by the Foundation. *Id*. ¶¶ 1-47.

7

Indeed, even in its Prayer, the Estate asks that Petrie tender all gifts and benefits that she received to the Foundation, subject to the 14th Judicial District Court establishing whether and to what extent any of the gifts and/or benefits should contribute to potentially applicable federal and state estate tax obligations. *Id*., Prayer.

In its brief, the Estate conceded that estate taxes were not a primary issue in the Agreement. (Estate Memo., pg. 8). Also, the Estate does not seem to have any significant interest in the outcome of the principal dispute because it states that it will be owed millions no matter who "wins" the matter at bar. *Id*. In fact, the Estate's proposed intervention does not really set forth any claims of its own. It expresses the possibility of one party or another owing the Estate sums to cover an unknown tax liability. Yet, it never specifically and definitively sets forth those claims. The Estate's interest in this matter, if any, is simply to see which party winds up with the benefits from the Agreement. This, of course, can be accomplished from the sidelines. Once the dispute between the Foundation and Petrie has been resolved, the Estate can simply make demand on the prevailing party. This demand can be made later in a separate suit, or potentially raised in the probate court in Colorado.[10] Alternatively, to the extent it could be argued that the Estate has some minimal interest, disposition of the principal demand will not impair that interest.

If the Estate has a preference in the outcome in the principal demand, there is no question but that the Estate favors the Foundation. (*See*, Intervention, Prayer). Yet, despite the alleged

---

[10] Petrie has filed claims against the Estate in Colorado. (Intervention, ¶ 15).

appointment of an "Independent Corporate Protector"[11] to manage the litigation on behalf of the Foundation, there is little doubt that the Foundation will adequately represent the interests of the Estate of its former co-trustee, as administered by its current co-trustee. Indeed, pursuant to the Agreement, upon Russell Chambers' death, his son, Jason R. Chambers is required to be appointed co-trustee of the Foundation. (Agreement, ¶ 2.6). Jason Chambers is also the residual legatee of the Estate. (M/Intervene, Exh. A). Due to the shared membership of the Foundation and Estate and their shared goals in this litigation, we are confident that the Estate's interests will be upheld in its absence. *Cajun Elec. Power Co-op., Inc. v. Gulf States Utilities, Inc.* 940 F.2d 117, 120 -121 (5th Cir. 1991)(intervention denied where intervenor brought no unique arguments and the principles of contract interpretation would yield the same result, regardless of the intervention).

We also decline the Estate's request to permissively intervene in this matter. Here, the speculative nature of the intervention and its apparent, yet ineffective attempt to compel remand guide our decision. *See*, *Sutphen Estates v. United States*, 342 U.S. 19, 23, 72 S.Ct. 14, 17 (1951)(denial of permissive intervention upheld because too speculative and too contingent on unknown factors).

II. Jason R. Chambers

As with the Estate's intervention, Jason R. Chambers ("Chambers") makes no effort to establish that his proposed intervention enjoys federal subject matter jurisdiction. Chambers and Petrie are both Georgia domiciliaries. (Petition, ¶ 1). Thus, if Chambers were joined as a

---

[11] *See*, Estate's Memo. Reponse, fn. 2.

defendant, he would be diverse from the Foundation; alternatively, we could employ supplemental jurisdiction. 28 U.S.C. § 1367. However, if Chambers were joined as a plaintiff, then diversity would be destroyed, and supplemental jurisdiction would be unavailable.

Despite styling his intervention as an answer and including a cross-claim against Petrie, Chambers states that he did not specify whether he should be aligned as a plaintiff or defendant. (Chambers Reply Brief; pg. 3). Rather, he contends that he should be permitted to intervene in whichever way he will be able to protect and assert his interest. *Id*. Presumably, that would be whichever way results in remand to state court.[12]

Were we to reach this issue, we would construe Chambers as a plaintiff. The court has previously held that the Foundation did not state a claim against Chambers, and that he was not an indispensable party. (July 14, 2005, Report and Recommendation; January 23, 2006, Judgment). Moreover, Chambers seeks to uphold the Agreement; he agrees with virtually all of the allegations in the petition; and he alleges additional claims against Petrie. (*See*, Chambers' proposed intervention). We need not decide this issue, however, because either way, Chambers does not meet the requirements of Rule 24.

Once again, the first issue is timeliness. Chambers was served with the original petition on April 11, 2005. (*See*, doc. # 5). He was an original defendant to the suit, but never made an appearance prior to his dismissal on January 23, 2006. Chambers contends in his brief that as the sole beneficiary of the Marshalled Cherubs Trust, he relied on the trustee to protect his interest

---

[12] As with the Estate's intervention, Chambers refers to a phantom contemporaneous motion to remand. (Intervention, ¶ VI). Chambers' first request in his prayer is again that the matter be remanded to the 14th Judicial District Court and that the state court decide the issues raised by the intervention. (Intervention, Prayer).

10

pursuant to its fiduciary obligation. (Chambers Reply Brief, pg. 2).[13] However, the Marshalled Cherubs Trust did not make an appearance while it was a defendant either.[14] Thus, when Chambers was notified that he had been dismissed as a defendant, he sought to intervene less than one month later on February 17, 2006. (Chambers Reply Brief, pgs. 2-3).

If we accept counsel's explanation for why Chambers did not make an appearance in this case while he was still a defendant, that would tend to excuse his inaction, but raises questions as to the remaining Rule 24(a)(2) considerations. For instance, the significance of his interest. Chambers states that he has an economic interest in the pending litigation. (Chambers Reply Brief, pg. 3). However, to meet Rule 24's requirement, the interest must be "direct, substantial, [and] legally protectable." *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005). Something more than a mere economic interest is required. *Id*. It must be "one which the substantive law recognizes as belonging to or being owned by the applicant." *Id*.

Chambers alleges that as the beneficiary of the Marshalled Cherubs Trust, he "may be liable to Petrie or any number of other trusts due to the exchange/relinquishment of rights in the agreement." (Chambers Reply Brief, pg. 4). However, Chambers does not set forth how this might occur under the Agreement. (*See*, Petition, Exh. A).

Chambers further argues that if he is not permitted to intervene, he would be legally bound by any decision, and collaterally estopped from pursuing any claims arising out of a breach of the Agreement. (Chambers Reply Brief, pg. 4). We reiterate that the Foundation

---

[13] Chambers' version of events are not set forth by sworn affidavit.

[14] Perhaps it too will be filing a motion to intervene.

seeks: a declaration recognizing the validity of the Agreement and compelling Petrie to submit to mediation in Lake Charles per the Agreement; a declaration that Petrie has forfeited all gifts and benefits under the Agreement to the Foundation; and money damages if she is unable to return the items. (Petition). In other words, if the Foundation prevails, the Agreement will be declared valid and Petrie compelled to mediate any disagreement over interpretation or enforcement. If mediation proves unsuccessful, then the parties agreed that Edwin K. Hunter would resolve the dispute as "amicable compounder." (Agreement, ¶ III.5).[15] Thus, if the validity of the Agreement is upheld, then Chambers is required to enforce his claims under the Agreement via mediation. *Id*.[16]

Alternatively, if the Foundation does not prevail, then the practical result will be that the Agreement is invalid. However, Petrie has not sought such a declaration in this suit.[17] Nor has she sought to restore the parties to the *status quo ante*. Thus, the parties will have to resort to Russell Chambers' Last Will and Testament probated in Colorado, and related legal principles not raised here.[18]

Moreover, with regard to the validity of the Agreement, there is no indication that

---

[15] If the dispute involves the Foundation, then Jason Chambers shall represent the Foundation in the mediation or arbitration proceeding. (Agreement, ¶ III.5).

[16] This would include Chambers' cross-claim against Petrie for purportedly taking items that were allotted to him under the Agreement.

[17] However, she has apparently sought that relief in pending litigation in Georgia and in the State of Colorado. (Petition, ¶ 15, Chambers Intervention, ¶ 15).

[18] *A fortiori*, to the extent Chambers' cross-claim seeks items not addressed in the Agreement, these are more properly litigated before the probate court.

Chambers wishes to advance arguments that will not be pursued by the Foundation. *See*, *Cajun Elec. Power Co-op., Inc. v. Gulf States Utilities, Inc.*, *supra.* Indeed, per the Agreement (that both the Foundation and Chambers seek to uphold), Jason Chambers is to be added as an additional trustee of the Foundation. (Agreement, ¶ II.6).[19] Win, lose or draw, Chambers cannot be injuriously affected by any decree that might be entered in the case. *See, Jett v. Zink*, 362 F.2d 723, 729 (5th Cir. 1966). To the extent that Chambers may have an interest, that interest will be protected and advanced by the Foundation. Accordingly, Chambers is not entitled to intervene as of right.[20]

We also decline Chambers' request to permissively intervene in this matter. This conclusion is influenced by the nexus between Chambers and plaintiff, Chambers' failure to appear and express an interest during more than eight months that he was a party to the suit, the all but admitted procedural maneuvering to effect remand, and the ready availability of alternative forums.[21]

For the foregoing reasons,

---

[19] Notwithstanding the appointment of an Independent Corporate Protector, – whom for all we know may be Jason Chambers.

[20] There is no statute conferring [Chambers] an unconditional right to intervene, and to the extent we are able to hypothesize an interest of [Chambers] in the subject of this action, he is not so situated that the disposition of this action may as a practical matter impair or impede his ability to protect such interest, necessitating Rule 24(a)(2) intervention.

*Barr v. Aesthetech Corp.*, 2001 WL 360726 (5th Cir. 2001)(unpubl.).

[21] *I.e.*, most of the considerations set forth in *Hensgens v. Deere and Company*, 833 F.2d 1179, 1182 (5th Cir. 1987).

The motions to intervene [doc. #s 42 & 49] are hereby DENIED.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 4th day of April, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE