# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CHAMBERS MEDICAL FOUNDATION** | : | **DOCKET NO. 05-0786** |
| **VS.** | : | **JUDGE MINALDI** |
| **CAROL PETRIE CHAMBERS, ET AL.** | : | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's second Motion to Remand [doc. # 73].[1] Plaintiff contends that the probate and/or domestic relations exceptions deprive the court of subject matter jurisdiction. Alternatively, plaintiff urges the court to abstain from exercising its subject matter jurisdiction.

### Background[2]

The instant suit was filed by the Chambers Medical Foundation ("the Foundation") on April 1, 2005, in the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana. On May 6, 2005, defendant, Carol Petrie Chambers ("Petrie"), removed the case to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1332. On May 25, 2005, the Foundation, whose co-trustees were Russell C. Chambers, M.D. ("Chambers") and Edwin K. Hunter,[3] filed a

---

[1] The motion has been referred to the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(A).

[2] Much of the following is excerpted from the court's April 4, 2006, Memorandum Ruling.

[3] *See*, Petition, ¶ 3.

motion to remand the case to state court. The motion to remand was denied by judgment dated January 23, 2006.

On May 30, 2005, Russell Chambers passed away. (Intervention, Exh. C). His Last Will and Testament was filed less than two months later on July 7, 2005, in Eagle County, Colorado. (*See*, Estate Memo., Exh. A). Edwin K. Hunter was named Independent Executor of the Russell C. Chambers Estate. *Id*. An order establishing the ancillary probate of Chambers' estate in Louisiana was signed on January 20, 2006. (Intervention, Exh. E).

The initial complaint in this matter focused upon the enforceability of an April 2, 2004, Agreement ("the Agreement") between Carol Petrie Chambers; Jason R. Chambers; Elaine B. Chambers, as trustee of the Marshalled Cherubs Trust; Dr. Rose Briglevich, as trustee of the R. C. Chambers Irrevocable Trust; Edwin K. Hunter, as co-trustee of the Chambers Medical Foundation; and Russell C. Chambers, M.D., individually, and as co-trustee of the Chambers Medical Foundation. (Petition, Exh. A). The Foundation alleged that pursuant to the Agreement, Petrie lost all rights to the gifts and benefits otherwise assigned to her in the Agreement, and that they instead passed to the Foundation. (Petition, ¶¶ 18-19). The suit also requested a declaration compelling Petrie to submit to mediation in Lake Charles, in accordance with the Agreement. (Petition, ¶ 26). Finally, the Foundation sought a money judgment against Petrie to the extent that she is unable to forward the gifts and benefits to the Foundation which she has already received under the Agreement. (Petition, ¶ 24).

In his Last Will and Testament, Chambers stated that "[o]n April 2, 2004, I was party to an agreement with my estranged wife, Carol Petrie Chambers which provided for her financially.

Accordingly, I make no provisions for her in this testament, and expressly revoke any testamentary power of appointment which may have been established in her favor." (Estate Memo., Exh. A).

## Discussion

a) Probate Exception

Federal diversity jurisdiction is subject to the judge-made exception that federal courts generally will not act in probate matters. *Kausch v. First Wichita Nat. Bank of Wichita Falls, Tex.*, 470 F.2d 1068, 1069 (5th Cir. 1972). However, "[t]he exception . . . is far from absolute, it turns, instead, on unclear distinctions of the utmost subtlety." *Id*. (quoted source omitted).

In *Marshall v. Marshall*, the Supreme Court recently readdressed the scope of the probation exception. *Marshall v. Marshall*, ___, U.S.___, 126 S.Ct. 1735 (2006). The Court observed that its theretofore most recent and pathmarking pronouncement on the probate exception was set forth in *Markham v. Allen*, 326 U.S. 490, 66 S.Ct. 296 (1964). *Id*. It quoted:

> "It is true that a federal court has no jurisdiction to probate a will or administer an estate · · ·. But it has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." 326 U.S., at 494, 66 S.Ct. 296 . . .
>
> "[W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, · · · it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." 326 U.S., at 494, 66 S.Ct. 296.

*Marshall*, 126 S.Ct. at 1747.

The *Marshall* Court interpreted "interference" to mean that "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*. *Marshall, supra*. The Court summed up:

> [t]hus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Marshall*, 126 S.Ct. at 1748.

Initially, we observe that the instant proceeding was prosecuted *in personam*, rather than *in rem*:

> [i]f the technical object of the suit is to establish a claim against some particular person, with a judgment which generally in theory, at least, binds his body, or to bar some individual claim or objection, so that only certain persons are entitled to be heard in defense, the action is in personam, although it may concern the right to, or possession of, a tangible thing.

*Tyler v. Judges of the Court of Registration*, 175 Mass. 71, 76, 55 N.E. 812 (Mass.1900)(citing, *Mankin v. Chandler*, 2 Brock. 125, 127, Fed. Cas. No. 9,030. (E. D. Va. 1823)).

Federal courts enjoy jurisdiction to determine the validity of claims against an estate or the claimants' interests therein. *Commonwealth Trust Co. of Pittsburgh v. Bradford*, 297 U.S. 613, 619, 56 S.Ct. 600, 602 (1936). "Such proceedings are not *in rem*; they seek only to establish rights; judgments therein do not deal with the property and other distribution; they adjudicate questions which precede distribution." *Id*. (citations omitted).

Here, plaintiff's petition alleges breach of the Agreement. (Petition). Plaintiff seeks a judgment against Petrie compelling mediation, requesting recognition of plaintiff's rights to all gifts and benefits conferred upon Petrie, and alternatively a money judgment. (Petition). In other words, plaintiff seeks a judgment *in personam* against Petrie establishing plaintiff's possessory

4

rights to the subject property. *See*, *Commonwealth Trust Co. of Pittsburgh, supra.*

We further observe that the probate court is arguably not even exercising *in rem* jurisdiction over the property principally at issue here. The petition seeks a judgment recognizing its rights to all of the gifts and benefits described under Section I of the Agreement (Petition, ¶ 37). The petition further alleges that Petrie "actually took possession of the gifts and/or benefits" described in the Agreement. (Petition, ¶ 39). Thus, at least according to the petition, the property plaintiff seeks to recover is not in the custody of the estate.[4]

Yet, even if some of the property at issue here is in the custody of the estate, it is manifest that the instant action does not trample upon the jurisdiction of the probate court. In *Akin v. Louisiana Nat. Bank of Baton Rouge*, the Fifth Circuit stated that

> [n]o interference with state court proceedings appearing, and the primary elements of federal jurisdiction being present, federal courts may, if they see fit, entertain proceedings involving recovery of shares or establishment of interests in an estate; recovery of a legacy or bequest under a will that has been probated; determination of whether an alleged widow was decedent's wife; validity of alleged transfer of an interest; partition of properties; enforcement of liens and mortgages, or equities arising from settlement and distribution and elections of the parties.

*Akin v. Louisiana Nat. Bank of Baton Rouge*, 322 F.2d 749, 751-752 (5th Cir. 1963)(quoting, Cyclopedia of Federal Procedure, § 2.87 (3d Ed.1951)).

Moreover, a federal court may hear a suit by a distributee to establish her right to a share in the estate, and enforce such adjudication against the administrator personally. *See, Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33, 44, 30 S.Ct. 10, 12 (1909)(citing *Payne v. Hook*, 7 Wall. 425, 74 U.S. 425 (1868)). In *Waterman*, the probate exception did not prohibit the

---

[4] In its reply brief, plaintiff inexplicably states that "all of the property implicated by The Agreement" remains in the Chambers' estate, and that Edwin K. Hunter, as succession representative, is deemed to have "possession of all property" in The Agreement. (Reply Brief, pg. 6).

5

federal court from determining whether the complainant was entitled to an alleged lapsed legacy and the residue of the estate. *Waterman, supra*.

Plaintiff filed the instant suit to enforce the terms of the Agreement between the parties. The only issues before this court focus upon the enforceability and validity of the Agreement. There is no reason that we cannot proceed to decide these issues. Any indirect effect that our determination *may* have on the estate will be resolved by other courts. We are not commandeering the administration of the estate or taking possession of the estate's assets. To the extent that it could be argued that the instant dispute impinges upon the affairs of the probate court, any such incursion is far less intrusive than that alleged in other cases where the probate exception was deemed inapplicable. *See, Waterman, supra* and cases cited therein; *Commonwealth Trust Co. of Pittsburgh, supra*. *A fortiori*, the probate exception is inapplicable here.

b) Domestic Relations Exception

The domestic relations exception applies only to cases "involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206 (1992); *see*, *Marshall*, 126 S.Ct. at 1746. Here, however, the instant suit was brought by a trust to enforce the terms of an Agreement. We are not called upon to issue a divorce or child custody decree, to determine alimony, or even to reconcile the Agreement with any rights that Petrie may have to alimony. These issues are left to the appropriate state court.[5] In short, the domestic relations exception does not apply.

---

[5] Divorce and alimony are now arguably moot because Chambers passed away before the entry of a divorce decree.

c) <u>Abstention</u>

In *Ankenbrandt v. Richards*, the Supreme Court recognized that abstention might be appropriate pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098 (1943), in a case that involves elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody. *Ankenbrandt, supra.* Abstention would be warranted when the case presented "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.* (citing *Colarado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244 (1976)). "Such might well be the case if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on the determination of the status of the parties." *Ankenbrandt, supra.*

The instant matter does not present such a case. No difficult questions of state law have been presented. We simply have been asked to enforce a contract. Likewise, our resolution of this case does not bear on policy problems of substantial public import. The dispute centers upon a contract between private parties. Moreover, there is no evidence that the instant suit is dependent upon the status of the parties pursuant to a divorce, alimony, or child custody decree. Rather, our interpretation of the Agreement can potentially aid other courts with the issues before them.

Finally, we remain mindful that abstention should be rarely invoked, because the federal courts have a "'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Ankenbrandt, supra* (quoting, *Colarado River Water Conservation Dist. v. United States*, *supra*). The circumstances of this case do not permit us to shirk that duty.

7

For the foregoing reasons,

IT IS RECOMMENDED that plaintiff's second motion to remand [doc. # 73] be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(c), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on July 26, 2006.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE